**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
Baltimore Division

IN RE:                                                                 Case No. 11-23875-JFS

RYAN BLAYLOCK AKA RYAN WILLIAM
BLAYLOCK
    Debtor                                                        Chapter 13

_____

SUNTRUST MORTGAGE, INC.
    Movant
vs.
RYAN BLAYLOCK AKA RYAN WILLIAM
BLAYLOCK
    Debtor/Respondent
and
MEGAN BLAYLOCK
    Co-Debtor/Co-Respondent
and
ELLEN W. COSBY
    Trustee/Respondent
_____

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY

    COMES NOW, SunTrust Mortgage, Inc. ("Movant"), by and through counsel, and respectfully represents as follows:

    1.  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334 and 157.

    2.  Movant is a mortgage lender/servicer.

    3.  On or about July 05, 2011, Ryan  Blaylock aka Ryan William Blaylock ("Debtor") filed a voluntary petition for relief in this Court under Chapter 13 of the United States Bankruptcy Code.

    4.  Megan  Blaylock is the Co-Debtor in this action.

    5.  Ellen W. Cosby is the Chapter 13 Trustee of the Debtor's bankruptcy estate.

    6.  At the time of the initiation of the bankruptcy proceedings, the Debtor and Co-Debtor owned a parcel of real estate located in Howard County, Maryland, and improved by a residence known as 6538 Frietchie Row, Columbia, MD 21045 (the "Property").

    7.  The Property is encumbered by a Deed of Trust securing the Movant, and recorded among the land records of the aforesaid county.  A copy of the Deed of Trust is attached hereto.

BGWW#: 122332

8. The Deed of Trust secures payment of a Promissory Note now payable to Movant. A copy of the Note is attached hereto.

9. The amount due under the Deed of Trust securing the Note payable to Movant as of November 01, 2011 is approximately $191,085.29, plus per diem interest and attorney's fees and court costs related to the present Motion for Relief from Automatic Stay and Co-Debtor Stay.

10. The Debtor is due for the August 01, 2011post-petition payment and every payment thereafter. More specifically, the Debtor is post-petition due for the August 01, 2011 through December 01, 2011 monthly payments, each in the approximate amount of $1,418.09, plus late charges and attorney's fees and costs incurred with the filing of the present motion. An Arrearage Worksheet is attached hereto.

11. The Debtor was in default at the time the present bankruptcy case was filed. The Debtor owes pre-petition arrears of $20,491.63. The pre-petition arrearage is detailed in the Movant's Proof of Claim.

12. The approximate total debt as of November 01, 2011 is as follows:

| | |
|---|---|
| Unpaid Principal Balance | $170,648.57 |
| Interest Due | $12,087.68 |
| Late Fees | $672.75 |
| Escrow Advance Balance | $6,801.83 |
| Pro Rata MIP/PMI | $150.16 |
| Corporate Advance Balance | $724.30 |
| Less:  Suspense Balance | $0.00 |
| Total: | $191,085.29 |

13. The Movant lacks adequate protection of its interest in the Property.

14. The Movant has been and continues to be irreparably injured by the stay of 11 U.S.C. §362(a) of the Bankruptcy Code, which prevents Movant from enforcing its rights under its Note and Deed of Trust.

15. Cause exists for lifting the automatic stay imposed by 11 U.S.C. §362(a) and §1301(a) of the Bankruptcy Code so as to enable the Movant to enforce its rights under its Note and Deed of  Trust.

16. In the event the automatic stay under 11 U.S.C. §362(a) is terminated as to the subject Property, Movant may, at its discretion, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. The Movant may contact the Debtor via telephone or written correspondence to offer such an agreement. Debtor may contact Movant, in kind. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

WHEREFORE, the Movant its successors and/or assigns prays that this court:

1.  Enter an order terminating the automatic stay imposed by 11 U.S.C. §362(a) and §1301(a)  of the Bankruptcy Code so as to enable Movant to proceed with a foreclosure action in the Circuit Court for Howard County, Maryland against the property located at 6538 Frietchie Row, Columbia, MD 21045, and to allow the successful purchaser at the foreclosure sale to obtain possession of same; and

2.  Grant such other and further relief as may be just and necessary.

Dated: December 02, 2011

Respectfully Submitted,

**Bierman, Geesing, Ward & Wood, LLC**

| | |
|---|---|
| _/s/ Adam M. Lynn, Esq._ | _/s/ Kevin Feig, Esq._ |
| Adam M. Lynn, Esq., Fed. Bar No. 29254 | Kevin Feig, Esq., MD Fed. Bar No. 15202 |
| Bierman, Geesing, Ward & Wood, LLC | Bierman, Geesing, Ward & Wood, LLC |
| 4520 East West Highway, Suite 200 | 4520 East West Highway, Suite 200 |
| Bethesda, MD 20814 | Bethesda, MD 20814 |
| (301) 961-6555 | (301) 961-6555 |
| (301) 961-6491 (facsimile) | (301) 961-6491 (facsimile) |
| bankruptcy@bgw-llc.com | bankruptcy@bgw-llc.com |
| _Attorney for the Movant_ | _Attorney for the Movant_ |

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of  December 2011, the following person(s) were served electronically via the CM/ECF system or were mailed a copy of the foregoing Motion for Relief from Automatic Stay and Co-Debtor Stay, by first class mail, postage prepaid:

Ellen W. Cosby, Trustee
300 E. Joppa Road, Suite 409
Towson, MD 21286

John Douglas Burns, Esq.
6303 Ivy Lane, Suite 102
Greenbelt, MD  20770

Ryan Blaylock aka Ryan William Blaylock
6538 Frietchie Row
Columbia, MD  21045

Ryan Blaylock aka Ryan William Blaylock
6538 Frietchie Road
Columbia, MD  21045

Megan Blaylock
6538 Frietchie Row
Columbia, MD  21045

Megan Blaylock
6538 Frietchie Road
Columbia, MD  21045

*/s/ Kevin Feig, Esq.*

Kevin Feig

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

Baltimore Division

IN RE:                                                          Case No. 11-23875-JFS

RYAN BLAYLOCK AKA RYAN WILLIAM
BLAYLOCK

    Debtor                                              Chapter 13

_____

SUNTRUST MORTGAGE, INC.

    Movant

vs.

RYAN BLAYLOCK AKA RYAN WILLIAM
BLAYLOCK

    Debtor/Respondent

and

MEGAN BLAYLOCK

    Co-Debtor/Co-Respondent

and

ELLEN W. COSBY

    Trustee/Respondent

_____

### NOTICE OF MOTION FOR RELIEF FROM STAY AND HEARING THEREON

    SunTrust Mortgage, Inc. has filed papers with the court seeking relief from the automatic stay of 11 U.S.C. Section 362 (a) to enable it to proceed to foreclose on the property located at:

**6538 Frietchie Row, Columbia, MD 21045**

    Your rights may be affected.  You should read these papers carefully and discuss them with your lawyer, if you have one in this bankruptcy case.  (If you do not have a lawyer, you may wish to consult one.)

    If you do not want the court to grant the motion for relief from stay, or if you want the court to consider your views on the motion, then by:

**December 19, 2011**

you or your lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

Megan Blaylock
6538 Frietchie Row
Columbia, MD  21045

Kevin Feig, Esq.
4520 East West Highway, Suite 200
Bethesda, MD 20814

BGWW#: 122332

Megan Blaylock

6538 Frietchie Road

Columbia, MD  21045


Ryan Blaylock aka Ryan William Blaylock

6538 Frietchie Road

Columbia, MD  21045


Ryan Blaylock aka Ryan William Blaylock

6538 Frietchie Row

Columbia, MD  21045


John Douglas Burns, Esq.

6303 Ivy Lane, Suite 102

Greenbelt, MD  20770


Ellen W. Cosby, Trustee

300 E. Joppa Road, Suite 409

Towson, MD 21286


    If you mail rather than deliver your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the court will receive it by the date stated above.

**The hearing is scheduled for January 13, 2012, at 09:15 am, in Courtroom 9C, United States Bankruptcy Court, 101 W. Lombard Street, Baltimore, MD  21201.**

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

| | |
|---|---|
| Dated: December 02, 2011 | Respectfully Submitted, |
| | **Bierman, Geesing, Ward & Wood, LLC** |
| | |
| _/s/ Adam M. Lynn, Esq._ | _/s/ Kevin Feig, Esq._ |
| Adam M. Lynn, Esq., Fed. Bar No. 29254 | Kevin Feig, Esq., MD Fed. Bar No. 15202 |
| Bierman, Geesing, Ward & Wood, LLC | Bierman, Geesing, Ward & Wood, LLC |
| 4520 East West Highway, Suite 200 | 4520 East West Highway, Suite 200 |
| Bethesda, MD 20814 | Bethesda, MD 20814 |
| (301) 961-6555 | (301) 961-6555 |
| (301) 961-6491 (facsimile) | (301) 961-6491 (facsimile) |
| bankruptcy@bgw-llc.com | bankruptcy@bgw-llc.com |
| _Attorney for the Movant_ | _Attorney for the Movant_ |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 2nd day of December, 2011, to the extent that the following person(s) were not served electronically via the CM/ECF system, a copy of the foregoing Notice of Motion for Relief from Stay and Hearing Thereon was mailed, first class postage prepaid to:

Ellen W. Cosby, Trustee
300 E. Joppa Road, Suite 409
Towson, MD 21286

John Douglas Burns, Esq.
6303 Ivy Lane, Suite 102
Greenbelt, MD  20770

Ryan Blaylock aka Ryan William Blaylock
6538 Frietchie Row
Columbia, MD  21045

Ryan Blaylock aka Ryan William Blaylock
6538 Frietchie Road
Columbia, MD  21045

Megan Blaylock
6538 Frietchie Row
Columbia, MD  21045

Megan Blaylock
6538 Frietchie Road
Columbia, MD  21045

        */s/ Kevin Feig, Esq.*
        Kevin Feig

LIBER **11768** FOLIO **061**

5/27/2009   12:44 PM   Csh 0044   Reg 0048
T/Ref ██████ rp 000001 R/Lne 000002
01 - Main Location
$0.00
Validation Number: ████████
██████  **000193**
Parcel Number: 16108081
Doc Type: Deeds of Trust
Consideration Amount: $0.00

TAP FD SURE $         20.00
RECORDING FEE        20.00
TOTAL                40.00
Rcst CH05   Rcpt # 80324
MIR    SLC     Blk # 2517
May 28, 2009        10:09 am

I hereby certify that this instrument has been prepared by:

_Tynlee Bailey_
[Signature(s)]

☐ under the supervision of the above signed Maryland Attorney.

☒ one of the parties named in this instrument.
Printed Name: TYNLEE BAILEY
Title: Closer
Company Name: SUNTRUST MORTGAGE, INC.

After recording please return to:

SUNTRUST MORTGAGE, INC.
[Name]
RVW 5093
[Attention]
1001 SEMMES AVENUE
[Street Address]
RICHMOND, VIRGINIA 23224
[City, State Zip Code]

—————————————————[Space Above This Line For Recording Data]—————————————————

FHA Case No.

☒ X" Box if "Purchase Money Deed of Trust"

# MARYLAND DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **May 11, 2009**. The grantor is **RYAN BLAYLOCK, MEGAN BLAYLOCK, HUSBAND AND WIFE** ("Borrower"). The trustee is **JACKIE MILLER**, whose address is **1001 SEMMES AVE, RICHMOND, VA 23224**, , (any one of whom may act and who are referred to as "Trustee"). The beneficiary is **SUNTRUST MORTGAGE, INC.** which is organized and existing under the laws of **THE COMMONWEALTH OF VIRGINIA**, and whose address is **901 SEMMES AVENUE, RICHMOND, VA   23224** ("Lender"). <|MD/1| Lender's Maryland Mortgage Lender License Number is _____. The   name   of   the   Mortgage   Originator   is _____. Mortgage Originator's Maryland Mortgage Originator License Number is _____. |MD/1|> The beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS. Borrower owes Lender the principal sum of **One Hundred Seventy Three Thousand Two Hundred Four and 00/100ths Dollars (U.S. $173,204.00)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 1, 2039**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.
www.compliancesource.com

Page 1 of 9

Closing

54301MD 02/02 Rev. 06/08
©2002, The Compliance Source, Inc.



LIBER | | 7 6 8 FOLIO 0 6 2

Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **HOWARD** County, Maryland:
**SEE ATTACHED SCHEDULE A**

which currently has the address of **6538 FRIETCHIE ROW**

|  | [Street] |  |  |
| --- | --- | --- | --- |
| **COLUMBIA** | , Maryland **21045** | ("Property Address"): |
| [City] | [Zip Code] |  |

Property Tax ID No.:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.                             Page 2 of 9
www.compliancesource.com

Closing

54301MD 02/02 Rev. 06/08
©2002, The Compliance Source, Inc.



LIBER **11768** FOLIO **063**

## EXHIBIT "A"

BEING KNOWN AND DESIGNATED As Lot No. A-132, as shown on a plat entitled, "Columbia, Village of Owen Brown, Lots A-1 to A-200, a Resubdivision of Parcel A, Section 1, Area 1, Sheet 4 of 4," which plat is recorded among the Land Records of Howard County, Maryland in Plat Book 24, folio 74. The improvements thereon being known as No. 6538 Frietchie Row.

TAX ID No. 16108081

RGS FILE: 19803WES

LIBER **11768** FOLIO **064**

Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order of Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless

| Maryland Deed of Trust | | Closing |
|---|---|---|
| FHA MERS Modified | | |
| The Compliance Source, Inc. | Page 3 of 9 | 54301MD 02/02 Rev. 06/08 |
| www.compliancesource.com | | ©2002, The Compliance Source, Inc. |



LIBER 11768 FOLIO 065

extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.
www.compliancesource.com

Page 4 of 9

Closing

54301MD 02/02 Rev. 06/08
©2002, The Compliance Source, Inc.



LIBER **11768** FOLIO**066**

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)  Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)  Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.  Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.                              Page 5 of 9
www.compliancesource.com

Closing

54301MD 02/02 Rev. 06/08
©2002, The Compliance Source, Inc.

LIBER 11768 FOLIO 067

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.                          Page 6 of 9                          54301MD 02/02 Rev. 06/08
www.compliancesource.com                                                                 ©2002, The Compliance Source, Inc.



LIBER I I 768 FOLIO O 6 8

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale, assent to decree, and/or any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement and by such other means as required by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000% of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Paragraph 18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Paragraph 18 of this Security Instrument.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider
☒ Planned Unit Development Rider ☐ Growing Equity Rider
☒ Other [specify] **Maryland Affidavit of Consideration (Purchase Money Transaction)**

---



LIBER 11768 FOLIO 069

The following signature(s) and acknowledgment(s) are incorporated into and made a part of this Maryland Deed of Trust dated **May 11, 2009** between **RYAN BLAYLOCK, MEGAN BLAYLOCK, HUSBAND AND WIFE, SUNTRUST MORTGAGE, INC.** and **JACKIE MILLER.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
**RYAN BLAYLOCK**                  -Borrower
                                   [Printed Name]

_____ (Seal)
*Ryan Blaylock*                    -Borrower
                                   [Printed Name]

_____ (Seal)
**MEGAN BLAYLOCK**                 -Borrower
                                   [Printed Name]

_____ (Seal)
*Megan Blaylock*                   -Borrower
                                   [Printed Name]

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.                Page 8 of 9
www.compliancesource.com

Closing
54301MD 02/02 Rev. 06/08
©2002, The Compliance Source, Inc.



LIBER 11768 FOLIO 070

## ACKNOWLEDGMENT

State of                         §
                                        §
County of                     §
(or City of Baltimore)

On this             day of                             , before me    ,    , personally appeared **RYAN BLAYLOCK and MEGAN BLAYLOCK,** known or identified to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he (or they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.



_____
Signature of Officer

Kathleen Jovanelly
Printed Name

Settlement Agent
Title of Officer

(Seal)

My Commission Expires:

KATHLEEN K. JOVANELLY
NOTARY PUBLIC, STATE OF MARYLAND
BALTIMORE COUNTY
COMMISSION EXPIRES OCTOBER 9, 2011

---

Maryland Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.                             Page 9 of 9
www.compliancesource.com

Closing

54301MD 02/02 Rev. 06/08
©2002, The Compliance Source, Inc.

LIBER 11768 FOLIO 071

Loan No. █████████

# AFFIDAVIT OF CONSIDERATION
## (Purchase Money Transaction)

THIS AFFIDAVIT OF CONSIDERATION is made this 11th day of **May, 2009**, and is incorporated into and is intended to comply with the requirement that it be contained in, endorsed on, or attached to the Security Instrument dated the same day as this Affidavit of Consideration.

STATE OF MARYLAND,
County ss: **HOWARD**
(or City of Baltimore)

I HEREBY CERTIFY, that on the                    day of                    , before me, the subscriber, a Notary Public of the State of Maryland and for the jurisdiction aforesaid, personally appeared

the agent of the party secured by the foregoing Security Instrument, and made oath in due form of law that the consideration recited in the Security Instrument is true and bona fide as therein set forth and that the actual sum of money (**$173,204.00**), advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Security Instrument to Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by Borrower of this Security Instrument; and also made oath that he/she is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESSETH, my hand and Notarial seal.

My Commission Expires:

_____
Notary Public

KATHLEEN K. JOVANELLY
Printed Name NOTARY PUBLIC, STATE OF MARYLAND
BALTIMORE COUNTY
COMMISSION EXPIRES OCTOBER 9, 2011

| Maryland Affidavit of Consideration (Purchase Money Transaction) | | Closing |
|---|---|---|
| The Compliance Source, Inc. | Page 1 of 1 | 56108MD 10/04 |
| www.compliancesource.com | | ©2007, The Compliance Source, Inc. |



LIBER 11768 FOLIO 072

FHA Case No.

# FHA PLANNED UNIT DEVELOPMENT RIDER

**MIN:**

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **11th** day of **May, 2009**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to **SUNTRUST MORTGAGE, INC.** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**6538 FRIETCHIE ROW, COLUMBIA, MD 21045**
*[Property Address]*

The Property Address is a part of a planned unit development ("PUD") known as
**OWEN BROWN**
*[Name of Planned Unit Development]*

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage" and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



LIBER 11768 FOLIO 073

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
RYAN BLAYLOCK                   -Borrower

_____ (Seal)
MEGAN BLAYLOCK                  -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

---

FHA Planned Unit Development Rider (Multistate)
—THE COMPLIANCE SOURCE, INC.—                    Page 2 of 2                    54504MU.CS 02/99
www.compliancesource.com                                                       ©2002, The Compliance Source, Inc.



LIBER 11768 FOLIO 074

Loan No. ███████

# LICENSE INFORMATION OR AFFIDAVIT FILED IN ACCORDANCE WITH REAL PROPERTY ARTICLE, §3-104.1, ANNOTATED CODE OF MARYLAND

Borrower(s): **RYAN BLAYLOCK and MEGAN BLAYLOCK**

Property: **6538 FRIETCHIE ROW, COLUMBIA, MD 21045**

*Licensee Information*

Maryland Mortgage Lender Name: **SUNTRUST MORTGAGE, INC.**

Maryland Mortgage Lender License Number:

Maryland Mortgage Originator Name:

Maryland Mortgage Originator License Number:

*Affidavit in Lieu of Maryland Mortgage Lender or Maryland Mortgage Originator Licensee Information*
*(Check the box and complete the information for the applicable selection(s) below. As used herein, the term "Loan" means the mortgage loan secured by the security instrument attached hereto, or if no instrument is attached, by the security instrument recorded at liber/book _____ , folio/page _____ .*

☐ *Affidavit of Individual Mortgage Originator:*

I, _____ , whose address is _____ , hereby affirm, under penalties of perjury, that I am the individual who originated the Loan and, in connection therewith, I am exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

☒ *Affidavit of Lender:*

I, **TYNLEE BAILEY**, hereby affirm, under the penalties of perjury, that I am the **employee of SUNTRUST MORTGAGE, INC.**. The Lender's address is **901 SEMMES AVENUE, RICHMOND, VA 23224**. I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under the Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland.

☐ *Affidavit of Lender (on its own behalf and on behalf of its employees who originated the Loan):*

I, _____ , hereby affirm, under the penalties of perjury, that I am the _____ of _____ (the "Lender"). The Lender's address is _____ . I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland. The



LIBER | | 768 FOLIO 075

employee of Lender who originated the loan is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

☐ *Affidavit of Mortgage Broker (on behalf of its employees who originated the mortgage loan):*

I, , hereby affirm, under the penalties of perjury, that I am the of . The Broker's address is . I am duly authorized by the Broker to execute this affidavit. The employee of the Broker, (the "Employee"), is the individual who originated the Loan. The Employee, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM, under the penalties of perjury and upon personal knowledge, that the contents of the foregoing paper are true.

_____ Date

_____ Signature of Affiant (Signing on behalf of Lender)

_____ Print Name and Title of Affiant

_____ Date

_____ Signature of Affiant (Individual Mortgage Originator)

_____ Print Name of Affiant



# NOTE

Loan No.: ▬▬▬▬

MIN: ▬▬▬▬

FHA Case No: ▬▬▬▬

| May 11, 2009 | WESTMINSTER | Maryland |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

**6538 FRIETCHIE ROW, COLUMBIA, MD 21045**
*[Property Address]*

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **SUNTRUST MORTGAGE, INC.** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Seventy Three Thousand Two Hundred Four and 00/100ths** Dollars (U.S. **$173,204.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Five and 00/1000ths** percent (**5.000%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **July 1, 2009**. Any principal and interest remaining on the first day of **June, 2039**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at **P.O. BOX 79041, BALTIMORE, MD 21279--0041** or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of **$929.80**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

Multistate FHA Fixed Rate Note
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 3

52603MU 12/01
©2001, The Compliance Source, Inc.



**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four and 00/100ths percent (4.000%)** of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Multistate FHA Fixed Rate Note
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 2 of 3

51603MU  12/01
©2001, The Compliance Source, Inc



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
RYAN BLAYLOCK                    -Borrower

_____ (Seal)
MEGAN BLAYLOCK                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

**Multistate FHA Fixed Rate Note**
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 3                    52603MU 12/01
www.compliancesource.com                                          ©2001, The Compliance Source, Inc.



### ARREARAGE WORKSHEET

BK Case No.: 11-23875-JFS

Debtor Name:              Ryan  Blaylock aka Ryan William Blaylock

Property Address:        6538 Frietchie Row
                         Columbia, MD  21045

----------------------------------------------------------------------------------------------------------------

Monthly payments:                              $1,418.09

Late Charge:                                   $0.00

----------------------------------------------------------------------------------------------------------------

**Total Pre-Petition arrearage:**                              =          **$20,491.63**


Post-Petition Due for: August 01, 2011, through December 01, 2011

(8/1/2011-12/1/2011)        5       payments     @    $1,418.09        =        $7,090.45

    Attorneys Fees                                        =          $650.00

    Attorneys Costs                                       =          $176.00

    **Total Post-Petition Arrearage**                     =          $7,916.45

    **Total Arrearage**                                   =          **$28,408.08**


BGWW#: 122332